# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **BREEANA MILLER, on behalf of herself and all others similar situated,** ) ) ) ) | |
| **Plaintiffs,** ) | Civil Action Number |
| v. ) ) | **5:16-cv-01543-AKK** |
| **JAH, LLC d/b/a JIMMY'S LOUNGE** ) ) ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Breeana Miller filed this lawsuit against Jimmy's Lounge ("Jimmy's"), on behalf of herself and others similarly situated, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*.[1] Doc. 1. Presently before the court is Miller's Amended Motion for Conditional Certification, doc. 48. The motion is fully briefed, docs. 49, 52, 54, and ripe for review. For the reasons stated more fully below, the motion is due to be granted in part.

**I. FACTUAL BACKGROUND**

Miller and the putative class members are dancers that worked at Jimmy's between September 16, 2013, and September 16, 2016. Docs. 47; 48 at 1. Jimmy's

---

[1] A second Plaintiff referred to as "Jane Doe No. 2," doc. 1, chose not to pursue her claims after this court granted the Defendant's Motion to Require Plaintiffs to Litigate in Their True Names, doc. 47 at 1 n.1.

1

allegedly misclassified Miller and the putative class members as independent contractors, and does not pay them any wages. Doc. 47 at 5-6. Instead, the putative class members' sole income from their work is in the form of tips. *Id.* at 6. Miller alleges that the putative class members are employees, rather than independent contractors, because Jimmy's promulgates a number of rules that the putative class members must follow. These rules include requiring the dancers to pay "tip-out" fees to Jimmy's management and other non-tipped employees; requiring them to report to work at specific times and attend a specific number of shifts each week; setting the prices of private dances; and imposing monetary penalties for absences, lateness, leaving shifts early, the dancers' weight, and other aspects of their physical appearance. *Id.* at 10-11.

## II. CONDITIONAL CLASS CERTIFICATION STANDARD

Section 216(b) of the FLSA authorizes actions for unpaid overtime compensation against an employer "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Thus, to maintain a collective action under the FLSA, plaintiffs must demonstrate that they are "similarly situated." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008). Further, would-be plaintiffs in a § 216(b) collective action must affirmatively "opt in" to the suit. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives

his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). "That is, once a plaintiff files a complaint against an employer, any other similarly situated employees who want to join must affirmatively consent to be a party and file written consent with the court." *Morgan*, 551 F.3d at 1259. The FLSA does not provide specific procedures by which potential plaintiffs may opt in, but the Supreme Court has held that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *see also Haynes v. Singer Co.*, 696 F.2d 884, 886 (11th Cir. 1983). Indeed, the Supreme Court has endorsed the practical benefits of FLSA collective actions, as follows:

> A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity. These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.

*Hoffman-La Roche*, 493 U.S. at 170.

The Eleventh Circuit has suggested a two-tiered process for district courts to manage collective actions. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218-19 (11th Cir. 2001). At the first stage, called conditional certification or the "notice" stage, the district court makes a determination, based on the pleadings and

affidavits on file, of whether it should authorize notice of the action to potential class members. *Id.* at 1218. Because the court has minimal evidence, the standard is lenient. *Id.* The district court must merely ascertain whether there are other employees who wish to opt in, and that they are similarly situated to the original plaintiff "with respect to their job requirements and with regard to their pay provisions." *Morgan*, 551 F.3d at 1259 (quoting *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991)). Indeed, this inquiry "typically results in 'conditional certification' of a representative class." *Hipp*, 252 F.3d at 1218. If the court conditionally certifies a class, court-supervised notice of the pendency of the action is then given to the potential class members, and they are afforded an opportunity to opt in to the action. *Id.*

The second stage of the process is activated by the defendant's filing of a decertification motion following the completion of discovery. *Id.* At this stage, based on a fully-developed record, the court makes a determination of whether the named plaintiffs and the opt-ins are similarly situated. *Id.* The plaintiff has a heavier burden to show similarity at the second stage. *Morgan*, 551 F.3d at 1261. If the court finds the plaintiffs are not similarly situated, it decertifies the action, dismisses the opt-in plaintiffs without prejudice, and the named plaintiffs proceed to trial on their individual overtime claims. *Hipp*, 252 F.3d at 1218. At all times,

the decision to certify an opt-in class under section 216(b) "remains soundly within the discretion of the district court." *Id*. at 1219.

### III. ANALYSIS

Miller's burden for conditional certification hinges on her ability to show that she and the prospective opt-in plaintiffs are "similarly situated." *Morgan*, 551 F.3d at 1259 (citation omitted). The FLSA does not define "similarly situated," *see* 29 U.S.C. § 216(b), and while the Eleventh Circuit has refused to adopt a precise definition, *see Morgan*, 551 F.3d at 1259, it has provided some guidance. It is clear that to maintain a FLSA collective action, the named plaintiff or plaintiffs "need only show that their positions are similar, not identical, to the positions held by the putative class members." *Grayson v. K-Mart*, 79 F.3d 1086, 1096 (11th Cir. 1996). Yet, the "similarities necessary to maintain a collective action under § 216(b) must extend 'beyond the mere facts of job duties and pay provisions.'" *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007). "Otherwise, 'it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse.'" *Id.* (citation omitted). Essentially, a plaintiff must demonstrate a "reasonable basis" for her claim of class-wide discrimination. *Grayson*, 79 F.3d at 1097. This burden, "which is not heavy, [is met] by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants'

affidavits to the contrary." *Id.* (citation omitted); *see also Morgan*, 551 F.3d at 1261 ("The district court's broad discretion at the notice stage is thus constrained, to some extent, by the leniency of the standard for the exercise of that discretion. Nonetheless, there must be more than 'only counsel's unsupported assertions that FLSA violations [are] widespread and that additional plaintiffs would come from other stores.'") (citation omitted).

Miller contends that she is similarly situated with the putative class, as they are all dancers that Jimmy's treats identically in terms of work hours, pay, and policies. Doc. 49 at 7-9. Jimmy's does not dispute this. *See* doc. 52. Rather, Jimmy's contends that Miller has failed to produce sufficient evidence that there are other employees that desire to opt in. *Id.* at 6-12. Miller counters by attaching with her reply the affidavit of a putative class member who states that she would opt in if given the opportunity.[2] Doc. 54-1.

---

[2] Jimmy's seeks to strike this affidavit because it was not served with the Motion for Conditional Certification, contrary to Federal Rule of Civil Procedure 6(c)(2). Doc. 55. Miller contends that the affidavit is proper as it rebuts the argument Jimmy's advanced in its response. Doc. 56. "Reply affidavits and declarations may contain facts not previously mentioned in the opening brief, as long as the facts rebut elements of the opposition memorandum and do not raise wholly new factual issues." *Giglio Sub s.n.c. v. Carnival Corp.*, No. 12-21680-CIV, 2012 WL 4477504, at *2 (S.D. Fla. Sept. 26, 2012), *aff'd,* 523 F. App'x 651 (11th Cir. 2013) (citing *Burger King Corp. v. Ashland Equities, Inc.*, 217 F. Supp. 2d, 1266, 1280-81 (S.D. Fla. 2002)). The affidavit is clearly put forward to rebut the argument Jimmy's raises. Moreover, the affidavit does not raise wholly new factual issues, as Miller supported her initial motion with three affidavits asserting that there were other dancers who would opt in to the case if given the opportunity. *See* docs. 49-1 at 7; 49-2 at 5; 49-3 at 6. Accordingly, the motion to strike, doc. 55, is due to be denied.

"The number of plaintiffs necessary to demonstrate a desire to opt in is not many, sometimes as few as two, three, or four." *Lemming v. Sec. Forces, Inc.*, No. 8:10-CV-1469-T-23AEP, 2010 WL 5058532, at *1 (M.D. Fla. Dec. 6, 2010) (citing *Brooks v. A. Rainaldi Plumbing, Inc.*, 2006 WL 3544737 (M.D. Fla. Dec. 8, 2006); *Tyler v. Payless Shoe Source, Inc.*, No. 2:05-CV-33F(WO), 2005 WL 3133763, at *1 (M.D. Ala. Nov. 23, 2005)). "Even a single affidavit or consent to join submitted by another individual stating that they are similarly situated and wish to join the suit is enough to bring the Plaintiff's contentions above pure speculation." *Brooks*, 2006 WL 3544737, at *2 (citing *Guerra v. Big Johnson Concrete Pumping, Inc.*, No. 05-14237-CIV, 2006 WL 2290512 (S.D. Fla. May 17, 2006)). Accordingly, the evidence Miller has presented satisfies her lenient burden at this juncture of the proceedings, and as such, Miller's motion for conditional certification of a class of all exotic dancers who worked at Jimmy's Lounge during the relevant three year period is due to be granted.

As for notice to the proposed class, Miller eschews the traditional methods and seeks notice instead electronically. In that respect, Miller requests that Jimmy's produce the names, addresses, email addresses, and cellular telephone numbers of putative class members.[3] According to Miller, electronic notice is

---

[3] Miller initially sought the disclosure of social security numbers as well, doc. 49 at 23, but correctly withdrew this request, doc. 54 at 10.

7

appropriate because the putative class members "tend to move [between addresses] fairly often" and "use [their] cell phones as [their] primary contact, and access text messages and emails much more than [they] would get regular mail at an address that may change."[4] Doc. 49 at 20. Jimmy's opposes Miller's request on the grounds that this information will be used to "stir up litigation" by sending notice through "serial and redundant" channels of communication. Doc. 52 at 12-13. The court sides with Jimmy's at this juncture because it has no basis yet to find that the traditional method of notice will not reach the prospective class members. For those prospective class members whose notice the Post Office returns, the court will consider email communication as an alternative means to reach them. Although the court will not fully foreclose it yet, the court has serious reservations about sanctioning text messages as a way to reach the potential class. As counsel

---

[4] Miller cites numerous out-of-circuit cases in support of electronic notice. *See Landry v. Swire Oilfield Servs., L.L.C.*, 252 F. Supp. 3d 1079, 1129 (D.N.M. 2017) (approving class notice by email and text message to putative class of oilfield equipment operators who may be "dispersed to various wellsites around the country and may be away from their homes and addresses of record for weeks or months at a time"); *Lynch v. Dining Concepts Grp., LLC*, No. 2:15-CV-580-PMD, 2015 WL 5916212, at *6 (D.S.C. Oct. 8, 2015) (approving class notice by email to putative class that included "many seasonal employees," and by text message where both mail and email notices were returned as undeliverable); *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015) (approving class notice by email and text message); *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-CV-2625 RJS, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) (approving class notice by text message to putative class of restaurant employees due to "high turnover characteristic of the restaurant industry"); *Calder v. GGC-Baltimore, LLC*, No. CIV. BPG-12-2350, 2013 WL 3441178, at *3 (D. Md. July 8, 2013) (approving class notice by email to putative class of exotic dancers); *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012) (approving class notice by email); *McKinzie v. Westlake Hardware, Inc.*, No. 09-0796-CV-W-FJG, 2010 WL 2426310, at *5 (W.D. Mo. June 11, 2010) (ordering defendant to turn over email addresses and cellular phone numbers of putative class members to class counsel).

for Miller know, some individuals have limited phone plans, and unwarranted text messages may cause these individuals to incur monetary charges. Moreover, sending potential class members text messages will subject them to the annoyance of unsolicited messages that Congress passed the Telephone Consumer Protection Act, in part, to address. In any event, Miller has leave to raise the issue of electronic notice again in a later motion, if warranted, to address notices that are undeliverable.

Finally, Jimmy's challenges the text of the proposed notice. According to Jimmy's, the proposed notice is inadequate to properly inform the putative collective class members of the posture of the case. Doc. 52 at 14-16. However, Miller contends that, as to the proposed changes made by Jimmy's which she objected to, these changes are either inconsequential or aimed at chilling the response rate of putative class members. Doc. 54 at 14-15. After considering the suggested modifications, the court sides with Miller.

### IV. CONCLUSION AND ORDER

For the reasons stated above, Miller's Amended Motion for Conditional Certification, doc. 48, is **GRANTED in part**, the motion to strike, doc. 55, is **DENIED**, and Miller's proposed notice, as modified in doc. 54-2, is **APPROVED**. To facilitate the provision of notice, Jimmy's is **ORDERED**, within fourteen days from the date of this order, to provide to Miller's counsel in a mutually agreeable

format a list containing the names and addresses of all dancers who worked at Jimmy's Lounge at any time between September 16, 2013, and September 16, 2016.

**DONE** the 5th day of January, 2018.

                                                     _____
                                                      **ABDUL K. KALLON**
                                                 UNITED STATES DISTRICT JUDGE